## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

GEORGE IVAN LOPEZ, et al.,

           Plaintiffs,

      v.

JOHN E. WETZEL, et al.,

           Defendants.

CIVIL ACTION NO. 3:21-CV-01819

(CONNER, J.)
(MEHALCHICK, M.J.)

## REPORT AND RECOMMENDATION

Before the Court is a partial motion to dismiss, filed by Defendants John E. Wetzel, Jeffery A. Beard, Martin F. Horn, and Pennsylvania Department of Corrections ("DOC") (collectively, "Defendants") on February 18, 2022. (Doc. 32). *Pro se* prisoner-Plaintiffs George Ivan Lopez, Darien Houser, Gerald Watkins, Ralph Stokes, Jose Uderra, and Richard A. Poplawski (collectively, "Plaintiffs") initiated this class action by filing a complaint on October 26, 2021, pursuant to 42 U.S.C. § 1983. (Doc. 1). Defendants "move to partially dismiss the complaint pursuant F.R.C.P. 12(b)(6), based upon an application of qualified immunity as to Plaintiff's claims under the Eighth and Fourteenth Amendments." (Doc. 32, at 1). For the following reasons, it is respectfully recommended that Defendants' motion be denied. (Doc. 32).

## I. BACKGROUND

On October 26, 2021, Plaintiffs, who are individuals presently sentenced to death and incarcerated by the Commonwealth of Pennsylvania, Department of Corrections ("DOC") at the State Correctional Institution at Phoenix ("SCI-Phoenix"), filed a complaint pursuant to 42 U.S.C. 1983 against Defendants. (Doc. 1). As part of their complaint, Plaintiffs seek class certification pursuant to Rule 23(b)(3) or, alternatively, Rule 23(b)(1) of the Federal Rules of

Civil Procedure. (Doc. 1). However, as of the date of this report and recommendation, Plaintiffs have not filed a motion seeking appointment of counsel and class certification. Plaintiff Lopez paid the required civil action filing fee on November 2, 2021, and the Court granted Plaintiffs Houser, Watkins, Stokes, Uderra, and Poplawski's individual motions to proceed *in forma pauperis* on December 21, 2021. (Doc. 22; Doc. 24).

In the complaint, Plaintiffs allege that they were held in solitary confinement under harsh conditions, including a small cell, constant illumination, lack of social interaction, lack of visitation, lack of educational services, lack of organized recreational activities. (Doc. 1, ¶¶ 22-64). Plaintiffs contend that they suffer from a variety of medical and mental health disorders, and aver that such disorders in combination with the harsh condition caused them to suffer significant physical pain and exasperated medical and mental issues. (Doc. 1, ¶¶ 90-144). Plaintiffs assert that the harsh conditions endured in solitary confinement lasted until December 3, 2019, when the DOC implemented a new policy that repositioned the environment of the Capital Case Unit ("CCU"). (Doc. 1, ¶ 65). Plaintiffs assert that their long-term solitary confinement in the CCU violated: (1) the Eighth Amendment prohibition against cruel and unusual punishment (Doc. 1, ¶¶ 167-181); (2) the Fourteenth Amendment (Doc. 1, ¶¶ 182-191); and (3) the America with Disabilities Act ("ADA") and the Rehabilitation Act (Doc. 1, ¶¶ 192-209). As relief, Plaintiffs seek damages and declaratory judgment that Defendants' conduct violated their Eighth and Fourteenth Amendment rights. (Doc. 1, at 30-31).

On February 18, 2022, Defendants filed a motion to partially dismiss Plaintiffs' complaint, along with a brief in support. (Doc. 32; Doc. 33). On February 24, 2022, Defendants filed two motions to stay discovery in this matter until the issue of consolidating

and transferring related cases pending in the Eastern District of Pennsylvania is resolved, and any forthcoming motion to dismiss or other dispositive motion is decided. (Doc. 34, at 1; Doc. 36, at 1). On March 11, 2022, the Court granted Defendants' motions to stay, directing Defendants to file status reports as to the status of the related cases in the Eastern District and any pending dispositive motions. (Doc. 40). On March 20, 2022, Plaintiffs filed a joint brief in opposition to Defendants' motion to dismiss. (Doc. 46). As of the date of this recommendation, Defendants indicate that there has been no change in the status of the related cases. (Doc. 50).

The motion to dismiss is fully briefed and ripe for disposition. (Doc. 32; Doc. 33; Doc. 46).

## II.    STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. *Schuchardt*, 839 F.3d at 347 (citing *Phillips v. Cty. of Allegheny*, 515 F.3d 224, at 233-234 (3d Cir. 2008). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 545).

With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

## III. DISCUSSION

In the support of their motion to dismiss, Defendants argue that Plaintiffs' claim for violation of their Eighth and Fourteenth Amendment rights should be dismissed with prejudice because Defendants were granted qualified immunity as to that issue by the United

States Court of Appeals for the Third Circuit. (Doc. 33, at 3). In addition, Defendants aver that Plaintiffs' claim of a violation of the ADA against Defendants Wetzel, Beard, and Horn should be dismissed because the ADA does not provide for a private cause of action against an individual defendant.[1] (Doc. 33, at 3). In response, Plaintiffs assert that Defendants have not satisfied their burden to establish immunity from liability as to their Eighth and Fourteenth Amendment claim, and that Defendants are nevertheless not entitled to qualified immunity for a multitude of reasons.[2] (Doc. 46, at 9). Furthermore, Plaintiffs submit that qualified immunity is not available because Defendants "knew that decades-long isolation in harsh conditions ran afoul of the Constitution. Yet they showed persistent, *determined* indifference. And it is axiomatic that such a state of mind is inconsistent with a finding of

---

[1] Plaintiffs assert that they are suing the Pennsylvania DOC, a public entity, for violations of the ADA. (Doc. 46, at 33). Plaintiffs specifically state that they "do *not* attempt to hold individuals responsible for monetary damages." (Doc. 46, at 33). In Count III of the complaint, Plaintiffs assert a claim against the Pennsylvania DOC under the ADA and Rehabilitation Act for failure to accommodate. (Doc. 1, at 28). Therefore, it is recommended that Defendants' motion to dismiss be DENIED because Plaintiffs do not assert claims against individual defendants in Count III of the complaint. (Doc. 32).

[2] First, Plaintiffs assert that qualified immunity itself is unlawful because "it is a judge-made expediency untethered to text or tradition." (Doc. 46, at 18). Next, Plaintiffs argue that Defendants "had fair and clear warning that their conduct was unlawful," because (1) the Supreme Court acknowledged the damages of isolation a century ago in *In re Medley*, 134 U.S. 160, 168 (1890); (2) "[a] scientific consensus about the harms of isolation emerged long before the plaintiffs were released from solitary confinement;" (3) DOC policy "concerning eventual *release* from solitary confinement demonstrates the defendants' knowledge of its perils;" (4) in a letter to Pennsylvania Governor Tom Corbett dated February 2014, "[t]he DOJ alerted the defendants to the violations inherent in holding disabled persons, like the plaintiffs, in indefinite solitary confinement;" and (5) in a letter dated February 2017, "[t]he ACLU alerted the defendants to the unlawfulness of the plaintiffs' confinement." (Doc. 46, at 18-24) (emphasis in original). In addition, Plaintiffs assert that "Defendants' deliberate indifference precludes entitlement to immunity" and that "the nature of the plaintiffs' sentences was an irrelevant distinction" because "[t]he right to be free from baseless, prolonged isolation was clearly established." (Doc. 46, at 24).

reasonable conduct – a requisite for entitlement [to] qualified immunity." (Doc. 46, at 11) (emphasis in original).

An award of qualified immunity protects a government official from civil liability and suit "insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts apply a two-part test to qualified immunity defenses: "We first determine whether a right has been violated. If it has, we then must decide if the right at issue was clearly established when violated such that it would have been clear to a reasonable person that her conduct was unlawful." *Williams v. Sec'y Pa Dept. of Corrs.*, 848 F.3d 549, 557 (3d Cir. 2017). Pursuant to the Supreme Court's explanation in *Pearson v. Callahan*, those inquiries need not be addressed in sequence; instead, courts are entitled to "exercise their sound discretion" and decide which issue to first address. *See* 555 U.S. 223, 236 (2009). Defendants are entitled to qualified immunity if either prong is not satisfied. *See Pearson,* 555 U.S. at 244-45.

"While the plaintiff must sufficiently plead a violation, the burden is on the defendants to establish they are entitled to qualified immunity." *E. D. v. Sharkey*, 928 F.3d 299, 306 (3d Cir. 2019). "Officials demonstrate they are entitled to qualified immunity only if they can show that a reasonable person in their position at the relevant time could have believed, in light of clearly established law, that their conduct comported with recognized legal standards." *E.D.*, 928 F.3d at 306. The second prong of the "qualified immunity analysis looks through the rearview window, not the windshield." *Williams*, 848 F.3d at 570. "The inquiry focuses on the state of the relevant law when the violation allegedly occurred." *Williams*, 848 F.3d at 570. "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018). In other

words, "[t]he rule must be 'settled law,' which means it is dictated by 'controlling authority' or 'a robust "consensus of cases of persuasive authority." ' " *D.C.*, 138 S. Ct. at 589-90 (internal citations omitted). "It is not enough that the rule is suggested by then-existing precedent." *D.C.*, 138 S. Ct. at 590. Rather, "[t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *D.C.*, 138 S. Ct. at 590. Still, "the facts of the existing precedent need not perfectly match the circumstances of the dispute in which the question arises." *Williams*, 848 F.3d at 570.

In some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (quoting *United States v. Lanier*, 520 U.S. 259, 271 (brackets in original) (internal quotation marks and citation omitted)). That is, "officials can still be on notice that their conduct violates established law even in novel factual circumstances" as long as the law gives the officials "fair warning" that their treatment of the inmate is unconstitutional. *Hope*, 536 U.S. at 741. The Third Circuit "look[s] to the Supreme Court, [The Third] Circuit, and [its] sister circuits to determine whether a right is clearly established:

> In conducting the inquiry into whether a right is clearly established, we look first for applicable Supreme Court precedent. If none exists, we consider whether there is a case of controlling authority in our jurisdiction or a robust consensus of cases of persuasive authority in the Courts of Appeals that could clearly establish a right for purposes of qualified immunity.

> *Porter v. Pennsylvania Dept. of Corr.*, 974 F.3d 431, 449 (3d Cir. 2020) (quoting *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 142 (3d Cir. 2017) (internal citations, quotation marks, and alterations omitted)).

The Third Circuit also "examine[s] persuasive authorities, such as [its] nonprecedential opinions" in addition to decisions from other Courts of Appeals. *See James v. New Jersey State Police*, 957 F.3d 165, 170 (3d Cir. 2020) (quoting *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 247-48 (3d Cir. 2016)). The Court may consider all relevant decisions under this inquiry, not just those cited by the parties. *James*, 957 F.3d at 170 (citing *Elder v. Holloway*, 510 U.S. 510, 516 (1994)).

A. EIGHTH AMENDMENT

Defendants argue that Plaintiffs' claim in Count I of the complaint, alleging violations of the Eighth Amendment due to the conditions of confinement in the CCU, should be dismissed because Defendants are entitled to qualified immunity as determined by the Third Circuit in *Porter*. (Doc. 33, at 9-10). In opposition, Plaintiffs aver that they have adequately pled violations of the Eighth Amendment and that "Defendants are not entitled to qualified immunity because the state of the law at the time of their conduct gave them ample warning that isolating a prisoner for decades under restrictive conditions offends the 8th Amendment." (Doc. 46, at 25).

The Eighth Amendment's prohibition against cruel and unusual punishment imposes an affirmative duty on prison officials to "provide humane conditions of confinement." *Young v. Martin*, 801 F.3d 172, 177 (3d Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "Whether conditions constitute cruel and unusual punishment is measured against the evolving standards of decency that mark the progress of a maturing society." *Porter*, 974 F.3d at 441. (internal citations and quotation marks omitted). In determining whether prison officials have violated the Eighth Amendment, the Third Circuit applies a two-prong test: 1) the deprivation must be "objectively, sufficiently serious; a prison official's act or omission

must result in the denial of the minimal civilized measure of life's necessities"; and (2) the prison official must have been "deliberate[ly] indifferen[t] to inmate health or safety." *Farmer*, 511 U.S. at 834 (internal quotation marks and citation omitted). "An official is deliberately indifferent if he 'knows of and disregards an excessive risk to inmate health or safety.' " *Porter*, 974 F.3d at 441. In addition, the Court "may also consider whether officials had a legitimate penological purpose behind their conduct. The Eighth Amendment prohibits punishments without penological justification." *Porter*, 974 F.3d at 441. (internal citations and quotation marks omitted).

In *Porter*, the Third Circuit held that thirty-three years in solitary confinement may violate the Eighth Amendment's prohibition on cruel and unusual punishment. 974 F.3d at 437-40. Porter, a death-row inmate whose death sentence had been vacated, challenged his three-decade incarceration in solitary confinement as violative of the Eighth and Fourteenth Amendment. *Porter*, 974 F.3d at 437. Porter alleged the conditions of solitary confinement caused "irreversible damage" to his mental health, including "severe anxiety, depression, panic, paranoia, bipolar mood swings, and at sometimes [sic] suicidal impulses" for which he takes depression medication. *Porter*, 974 F.3d at 437. The defendants argued that the Eighth Amendment claim was barred under *Peterkin v. Jeffes*, 855 F.2d 1021, 1022 (3d Cir. 1988), where the Third Circuit held that a class of prisoners bringing a facial challenge to death row conditions "ha[d] not established that the totality of the conditions of their confinement constitutes cruel and unusual punishment." *Porter*, 974 F.3d at 442.

Rejecting this contention, the court concluded that *Peterkin* did not control and that Porter satisfied the two prongs of stating an Eighth Amendment claim. *Porter*, 974 F.3d at 443-44. The court held that the consensus of medical evidence regarding prolonged solitary

confinement "makes plain that a reasonable jury could conclude that thirty-three years in solitary confinement posed a substantial risk of harm to Porter." *Porter*, 974 F.3d at 442-43; *see also Palakovic*, 854 F.3d at 225 (acknowledging "the robust body of legal and scientific authority recognizing the devastating mental health consequences caused by long-term isolation in solitary confinement"). Citing case law and scientific and medical research, the court stated that "the substantial risks of prolonged solitary confinement are 'obvious,' 'longstanding, pervasive, well-documented, [and] expressly noted by prison officials in the past." *Porter*, 974 F.3d at 445. Highlighting the anxiety, depression, paranoia, panic attacks, and suicidal ideation that solitary confinement can cause, the court found: "[t]he empirical record compels an unmistakable conclusion: this experience is psychologically painful, can be traumatic and harmful, and puts many of those who have been subjected to it at risk of long-term . . . damage." *Porter*, 974 F.3d at 442 (quoting *Williams*, 848 F.3d at 570).

Despite satisfying the Eighth Amendment test, the court found that the defendants were entitled to qualified immunity because Porter's Eighth Amendment rights had not been clearly established at the time of Porter's solitary confinement. *Porter*, 974 F.3d at 450-51. Therefore, the defendants were able to assert a successful qualified immunity defense. *See Johnson v. Pennsylvania Dep't of Corr.*, 846 F. App'x 123, 129 (3d Cir. 2021) (prisoner pled plausible Eighth Amendment claim by alleging prison officials kept him in solitary confinement for almost 20 years, even after murder conviction and death sentence were vacated, and that isolation caused irreversible damage to mental health; however defendants were entitled to qualified immunity because officials were not on notice at the time of prisoner's confinement that right was clearly established).

Similar to the plaintiff in *Porter*, Plaintiffs satisfy both prongs of the Eighth Amendment test. First, Plaintiffs raise an as-applied challenge, rather than a facial challenge, to the deprivation of their liberty interest through the failure to provide notice and a meaningful opportunity to be heard and challenge their prolonged solitary confinement, and to the "conscious-shocking" decisions to continue his confinement for a prolonged period of time without providing sufficient procedural protections. (Doc. 1, at 24-26). "A]n 'as applied' challenge is a claim that the operation of a statute is unconstitutional in a particular case while a facial challenge indicates that the statute may rarely or never be constitutionally applied." 16 C.J.S. Constitutional Law § 243; *see also United States v. Huet*, 665 F.3d 588, 600-01 (3d Cir. 2012) (same); *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010) (same). The Third Circuit has specifically recognized the harmful effects of prolonged solitary confinement that Plaintiffs have alleged here and noted that caselaw and research "make[ ] the devastating effects of prolonged solitary confinement abundantly clear." *Johnson,* 846 F. App'x at 129. Next, Plaintiffs have spent a varying number of years in solitary confinement, ranging from eight years to thirty-two years. (Doc. 1, ¶¶ 4-9); *see Johnson*, 846 F. App'x at 129 (finding that plaintiff incarcerated in solitary confinement for almost twenty years stated an Eighth Amendment claim). Lastly, Plaintiffs satisfy the subjective prong of stating an Eighth Amendment claim because "the substantial risks of prolonged solitary confinement are 'obvious,' 'longstanding, pervasive, well-documented, [and] expressly noted by prison officials in the past.' " *Porter*, 974 F.3d at 445 (quoting *Farmer*, 511 U.S. at 842) (alteration in original); (Doc. 1, ¶¶ 170-73). The Third Circuit has repeatedly emphasized, "that going forward it is well established in our Circuit that solitary confinement of the sort alleged by [prisoners] satisfies the second prong of the Eighth Amendment test and supports an Eighth

Amendment claim." *Johnson*, 846 F. App'x at 129; *see Porter*, 974 F.3d at 445. Therefore, the undersigned finds that Plaintiffs' complaint states an Eighth Amendment claim.

Relying on *Porter*, Defendants argue that they are entitled to qualified immunity as to Plaintiffs' Eighth Amendment claims arising out of the conditions of confinement in the CCU. (Doc. 33, at 8). Furthermore, Defendants argue that "by the time *Porter* had been decided and the opinion issued on September 1, 2020, the Defendants had already made significant improvements to the CCU, such that the conditions of confinement in that unit could no longer be seriously challenged as restrictive or solitary confinement." (Doc. 33, at 10). Thus, Defendants aver that there was "no period for which Plaintiffs were housed in the CCU where the Defendants were either not entitled to qualified immunity for the conditions of their confinement, or when the conditions had improved to such a degree that no Eighth Amendment claim could have survived." (Doc. 33, at 10). Plaintiffs attempt to distinguish *Porter* by arguing that the decisions from *Palakovic*, 854 F.3d at 225, and *Allah v. Bartkowski*, 574 F. App'x 135, 138-39 (3d Cir. 2014), are more applicable to these circumstances because this action "has nothing to do with death sentences" as Plaintiffs challenge their "prolonged isolation *plus* some additional factor(s) to make it a little more cruel." (Doc. 46, at 27). Plaintiffs submit that "[a]t minimum, the plaintiffs require discovery in order to bolster their theory of greater factual affinity with *Palakovic*, *Allah*, *et alia*, than with *Porter*." (Doc. 46, at 28).

Having found that the complaint states a plausible Eighth Amendment claim, the undersigned also finds that Plaintiffs' rights to mental health treatment were clearly established at the time of the alleged violations. "The right to medical care when incarcerated under conditions that pose a risk of serious harm traces back to the Supreme Court's holding

in *Estelle*, where the Court held that denying a prisoner adequate medical care violates the Eighth Amendment." *Stuart v. Pierce*, No. 17-CV-934, 2022 WL 605821, at *9 (D. Del. Feb. 24, 2022) (citing *Estelle*, 429 U.S. at 104); *see also Farmer*, 511 U.S. at 834 (holding deliberate indifference claims viable under the Eighth Amendment when prisoners are "incarcerated under conditions posing a substantial risk of serious harm"). The Third Circuit has held that failure to provide mental health treatment to a prisoner in solitary confinement who has mental illnesses can establish deliberate indifference under the Eighth Amendment. *See Johnson*, 846 F. App'x at 129 (emphasizing "that going forward it is well established in our Circuit that solitary confinement of the sort alleged by [prisoners] satisfies the second prong of the Eighth Amendment test and supports an Eighth Amendment claim). Additional case law from the Third Circuit and other circuits establishes that a mentally ill prisoner's access to adequate mental health treatment is an established right. *See Goodrich v. Clinton Cty. Prison*, 214 F. App'x 105, 111 (3d Cir. 2007) (holding that the plaintiff's mental illness created a serious medical need requiring treatment beyond that available in solitary confinement); *Stuart*, 2022 WL 605821, at *9 (holding that prisoner in solitary confinement with history of self-harm and risk of suicide alleged a serious medical need and defendant's indifference to that need); *Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir. 1977) (holding that a prisoner with serious mental illness "is entitled to psychological or psychiatric care"); *Doty v. Cty of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994) ("[R]equirements for mental health care are the same as those for physical health care needs."); *Langley v. Coughlin*, 715 F. Supp. 522, 540 (S.D.N.Y. 1989) (holding that failure to screen out mentally ill individuals from SHU can plausibly violate the Eighth Amendment).

In *Johnson*, the Third Circuit found that the defendants were entitled to qualified immunity as to the plaintiff's Eighth Amendment claim because "the Eighth Amendment right in this context was not clearly established at the time of [Johnson's] solitary confinement." 846 F. App'x at 129 (citing *Porter*, 974 F.3d at 450-51). In that case, the plaintiff was kept in solitary confinement for almost twenty years, even after his murder conviction and death sentence were vacated and he was granted a new trial. *Johnson*, 846 F. App'x at 125-26. Unlike the plaintiff in *Johnson*, Plaintiffs' convictions were never vacated and they were not released from solitary confinement until the DOC issued a policy change on December 3, 2019, and made effective on December 10, 2019, that significantly expanded capital prisoners' access to congregate activities, out of cell opportunities, contact visitation, and services. (Doc. 33, at 16). In addition, Plaintiffs submit that the clearly established principle that they advance has nothing to do with death sentences. (Doc. 46, at 27). Instead, Plaintiffs assert that they "are proceeding under the theory of *Solitary+*, a 'premise' with 'clear applicability' here." (Doc. 46, at 27-28).

At the motion to dismiss stage, taking the allegations of the complaint as true, the undersigned finds that access to adequate mental health treatment was clearly established at the time Plaintiffs allege the violations occurred. *See Goodrich*, 214 F. App'x at 111. Plaintiffs are entitled to proceed into discovery to determine whether Defendants has personal knowledge of constitutional deficiencies in Plaintiffs' prolonged solitary confinement at the time such violations occurred. *See Snider v. Pennsylvania DOC*, 505 F.Supp.3d 360, 430 (M.D. Pa. 2020). Therefore, the undersigned finds that Defendants are not entitled to qualified immunity on Count I. Accordingly, it is recommended that Defendants' motion to dismiss be denied as to Count I of the complaint.

B. Fourteenth Amendment

Defendants also argue that Plaintiffs' claim of violation of their Fourteenth Amendment rights of due process should be dismissed with prejudice because "Defendants were previously granted qualified immunity as to any Fourteenth Amendment claims addressing automatic confinement to or failure to release from the CCU for prisoners who have not received sentencing relief." (Doc. 33, at 10) (citing *Williams*, 848 F.3d at 570). In response, Plaintiffs argue that their allegations state a viable procedural due process claim under the Fourteenth Amendment, which precludes the granting of immunity. (Doc. 46, at 28).

To establish a liberty interest under the Fourteenth Amendment in a challenge to the conditions of confinement, "the right alleged must confer 'freedom from restraint which . . . imposes *atypical and significant hardship* on the inmate in relation to the ordinary incidents of prison life.' " *Williams,* 848 F.3d at 559 (quoting *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997)) (omission and emphasis in original). When analyzing a due process claim based on a stay in solitary confinement, the first step is to determine whether the plaintiff alleged a deprivation of his constitutionally protected liberty interest. *Shoats v. Horn*, 213 F.3d 140, 143-44 (3d. Cir. 2000). If such a deprivation is alleged, the second step is to determine whether the plaintiff received "all of the process he was due." *Shoats*, 213 F.3d at 143.

A prison official can deprive an inmate of his constitutionally protected liberty interest by keeping him in solitary confinement if such a stay "impose[s] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). To determine the significance of the alleged hardship, courts consider the length and nature of the stay in confinement. In this case, Plaintiffs' indefinite

stays in solitary confinement, ranging from eight years to thirty-two years, without receiving adequate care for their substantial mental health needs, is sufficient to allege a hardship outside of those imposed in the ordinary course of prison life. *See Williams*, 848 F.3d at 561 (finding that six years and eight years in solitary confinement presented an atypical hardship); *Shoats*, 213 F.3d at 144 (finding that eight years in solitary confinement presented an atypical hardship); (Doc. 1, ¶¶ 4-9)

Having found that Plaintiffs sufficiently alleged an atypical and significant hardship, the Court must determine whether Plaintiffs alleged that they did not receive due process. *Shoats*, 213 F.3d at 143. In *Shoats*, the Third Circuit held a prison must provide a prisoner with an opportunity to present an "informal, non-adversary review" to "the prison official charged with deciding" his status. 213 F.3d at 145 (quoting *Hewitt v. Helms*, 459 U.S. 460, 476 (1983)). Here, Plaintiffs allege that their Fourteenth Amendment due process rights were violated when they "were held in solitary confinement indefinitely without any meaningful opportunity to challenge their placement through administrative means." (Doc. 1, ¶ 185). Plaintiffs refer to DOC policy DC-ADM 804, Inmate Grievance System Procedures Manual, which states that "[i]ssues concerning . . . the reasons for confinement in administrative custody will not be addressed through the Inmate Grievance System."[3] (Doc. 1, ¶ 185). Furthermore, Plaintiffs aver that their continuing isolation was automatically reapproved to continue by a "Program Review Committee," which consists of DOC employees "who were powerless to affect change in department-wide policies," every ninety days without any notice

---

[3] Courts may take "judicial notice of the Pennsylvania Department of Corrections' (DOC) policy statement, DC–ADM 804, captioned Inmate Grievance System." *See Ali v. Superintendent SCI Camp Hill*, No. 1:CV-14-1851, 2015 WL 5913197, at *3 (M.D. Pa. Oct. 7, 2015) (internal citations omitted).

or meaningful opportunity to rebut or respond to the automatic continuation. (Doc. 1, ¶¶ 186-80). Plaintiffs contend that Defendants' conduct of "subjecting the plaintiffs [indefinitely and without legitimate rationale) in depraved conditions they knew were certain to be harmful – shocks the conscience." (Doc. 1, ¶ 191). Given Plaintiffs' lengthy stay in solitary confinement and the absence of opportunity for meaningful review, the undersigned finds that the complaint has alleged grounds to be entitled to "some amount of process for continued detention." *Stuart*, 2022 WL 605821, at *7 (citation omitted). Thus, the complaint alleges a viable procedural due process claim under the Fourteenth Amendment.

Defendants argue that they are entitled to qualified immunity because the Third Circuit "previously granted qualified immunity as to any Fourteenth Amendment claims addressing automatic confinement to or failure to release from the CCU for prisoners who have not received sentencing relief." (Doc. 33, at 11) (citing *Williams*, 848 F.3d at 576). Defendants explain that if Plaintiffs had received any sentencing relief in the form of a successful PCRA or habeas action, they would have received due process in the form of a review of Plaintiffs' current sentence posture and removal from the CCU pending re-sentencing. (Doc. 33, at 12). However, because Plaintiffs have received no such relief and their Fourteenth Amendment claims challenge the lack of a regular review process for their continued confinement in the CCU, Defendants assert that they have been granted qualified immunity as to Plaintiffs' Fourteenth Amendment due process claims arising out of continued confinement in the CCU. (Doc. 33, at 12).

The Supreme Court and Third Circuit have held that lengthy stays in solitary confinement can violate a prisoner's Fourteenth Amendment rights. *See Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005); *Shoats*, 213 F.3d at 145. In *Williams*, the

Third Circuit held that "inmates on death row whose death sentences have been vacated have a due process right to avoid continued placement in solitary confinement . . . absent . . . meaningful protections." *Williams*, 848 F.3d at 576. The court described "the devastating effects of extreme isolation and sensory deprivation," both psychological and physical, which risk "disintegrati[ng]" "an individual's very identity." *Williams*, 848 F.3d at 566, 568. The court concluded that these hardships were both atypical and significant. *Williams*, 848 F.3d at 574. In this context, the court cautioned that the state must conduct individualized determinations to justify that extreme level of deprivation. *Williams*, 848 F.3d at 574. While the court found that while the plaintiffs' claims were barred by qualified immunity, it emphasized that the holding "provides 'fair and clear warning' that, despite our ruling against Plaintiffs, qualified immunity will not bar such claims in the future." 848 F.3d at 574 (quoting *Lanier*, 520 U.S. at 271).

The Third Circuit applied the *Williams* holding to a prisoner who had been in solitary confinement for thirty-three years without penological justification or individualized review, even after his sentence had been vacated. *Porter*, 974 F.3d at 437-40. The court concluded that "[b]ecause [the plaintiff]'s due process rights have been clearly established since we decided *Williams* in 2017, Defendants are not entitled to qualified immunity on this claim." 974 F.3d at 449. Gathering cases from other courts, the court explained that "[t]here is therefore wide consensus that prolonged and indefinite solitary confinement gives rise to a due process liberty interest for inmates in [the plaintiff]'s circumstances." *Porter*, 974 F.3d at 449. The court noted that "[t]hese cases gave Defendants 'fair warning' that keeping an inmate who has been in solitary confinement for thirty-three years on death row while appeals of his vacatur order proceed violates his procedural due process rights." *Porter*, 974 F.3d at 449. Therefore, the

- 19 -

court denied the defendants' request for qualified immunity. *Porter*, 974 F.3d at 449; *see Johnson*, 846 F. App'x at 127-28 (qualified immunity did not bar prisoner's Fourteenth Amendment due process claim because *Williams* decision put officials on notice that right was clearly established at the time of prisoner's solitary confinement).

Here, Plaintiffs' liberty interests and rights to procedural due process under the Fourteenth Amendment were clearly established at the time of the alleged violation. Therefore, Defendants are not entitled to qualified immunity as to Count II of the complaint. Whether Plaintiffs faced an atypical hardship and received inadequate process for their indefinite detention in solitary confinement should be answered with discovery. Accordingly, it is recommended that Defendants' motion to dismiss be denied as to Count II of the complaint.

## IV.    CONCLUSION

Based on the foregoing, it is respectfully recommended that the DOC Defendants' motion to dismiss (Doc. 32) be **DENIED**.

BY THE COURT:

Dated: August 3, 2022                   *s/ Karoline Mehalchick*
                                         **KAROLINE MEHALCHICK**
                                         **Chief United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

GEORGE IVAN LOPEZ, et al.,

                Plaintiffs,

      v.

JOHN E. WETZEL, et al.,

                Defendants.

CIVIL ACTION NO. 3:21-CV-01819

(CONNER, J.)
(MEHALCHICK, M.J.)

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **August 3, 2022**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: August 3, 2022

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**